**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KHALIL BURNETT | : | |
| | : | |
| Appellant | : | No. 1129 EDA 2020 |

Appeal from the PCRA Order Entered March 5, 2020
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0003222-2009

BEFORE:   PANELLA, P.J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY PANELLA, P.J.:                    **FILED JULY 23, 2021**

Khalil Burnett appeals from the order dismissing his first petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. The only issue on appeal is whether the PCRA court erred by determining that trial counsel was not ineffective for failing to raise a self-defense claim. Burnett's appointed counsel has filed an application to withdraw from representation and a corresponding no-merit letter pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley,** 550 A.2d 213 (Pa. Super. 1988).[1] Because we agree with counsel

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] As the Commonwealth points out, counsel mistakenly labeled his brief an **Anders** brief. **Anders** applies only when counsel seeks to withdraw from

*(Footnote Continued Next Page)*

and the PCRA court that Burnett's ineffectiveness claim has no merit, we grant counsel's application and affirm the PCRA court's order denying the PCRA petition.

When we review the denial of a PCRA petition, we examine whether the PCRA court's determinations are supported by the record and free of legal error. **See Commonwealth v. Roney**, 79 A.3d 595, 603 (Pa. 2013). The PCRA court's credibility determinations, when supported by the record, are binding on this Court. **See id**. However, we apply a *de novo* standard of review to the PCRA court's legal conclusions. **See id**.

On October 4, 2008, Burnett was involved in a gunfight on the 7300 block of Garman Street in Philadelphia. Burnett was shot in the leg during the gunfight and taken to the hospital for treatment. He was subsequently arrested and charged with multiple offenses related to the gunfight. He proceeded to a jury trial in June of 2012.

At trial, Rosemarie Schrader testified that she was sitting on the front porch of her home on the 7300 block of Garman Street when she heard what she thought were fireworks. She looked up, and saw two Black males with

---

representation on direct appeal. When counsel seeks to withdraw from representation on collateral appeal, as here, **Turner** and **Finley** apply. **See Commonwealth v. Widgins**, 29 A.3d 816, 817 n.2 (Pa. Super. 2011). Counsel's mistake is not fatal to his application to withdraw, though, as we have held that "because an **Anders** brief provides greater protection to a defendant, this Court may accept an **Anders** brief in lieu of a **Turner/Finley** letter." **Id**. (citation omitted).

white t-shirts running down the middle of the street and away from the direction of the sound. She saw those two males turn onto Berbro Street at the end of the block. As she looked in the opposite direction, Schrader saw another Black male, who Schrader testified was wearing a dark "Dickies" uniform. Schrader further recounted that she saw this male's hand "outstretched," and then she saw a flash that she immediately recognized as a gunshot. **See** N.T. Trial, 6/26/12 at 56-57. She heard that male yelling, "Go ahead and run pussies!" **See id**. at 57. The male with the gun then ran in the same direction as the other two males, and he also turned onto Berbro Street.

Detective Keith Scott of the Philadelphia Police Department also testified at Burnett's trial. He stated that he was on patrol on October 4, 2008, when he received a radio call alerting him about the shooting. He received information that there were two Black males, one wearing a white shirt and the other a dark shirt, who had possibly been involved in the shooting. Detective Scott saw two males matching the description go up the stairs of the enclosed front porch of 2602 Berbro Street and then come out moments later. Burnett was one of the males, who Detective Scott testified was wearing a blue "Dickies" uniform. Burnett informed the detective that he had been shot. When Detective Scott learned that Burnett did not live at the 2602 Berbro Street address, he searched the inside of the enclosed porch and saw a gun protruding from a lawn mower bag. Detective Scott secured the scene and had Burnett escorted to the hospital.

Detective Timothy McCool also testified. He explained that he was assigned to investigate the shooting and that he recovered a .45 caliber revolver containing six fired cartridge casings from the enclosed front porch of 2602 Berbro Street. He also recovered 16 fired cartridge casings of varying types from the corner of Garman and [nearby] Bialy Streets and a projectile from the 7300 block of Garman Street. He opined that, including the revolver, "there were four different weapons fired that day." *Id*. at 154.

Burnett did not testify at trial but he presented the testimony of his cousin, who claimed that he had been standing outside on Garman Street with Burnett and another person on the night of the shooting when "somebody threw a hood on [and] started shooting." N.T. Trial, 6/27/12, at 41. The cousin testified that he, Burnett and the other person started running and rounded a corner, when Burnett told him he had been shot.

The jury nonetheless convicted Burnett of criminal trespass, possession of a firearm by a minor and aggravated assault. On September 4, 2012, the court sentenced him to an aggregate term of 12 to 32 years' imprisonment. Burnett appealed to this Court, and we affirmed his judgment of sentence.

Burnett did not file a petition for allowance of appeal with our Supreme Court, but instead filed a timely, *pro se* PCRA petition. Counsel was appointed and filed a supplemental PCRA petition on Burnett's behalf claiming counsel was ineffective for failing to: 1) raise a self-defense claim; 2) object to the court's failure to give the jury a "no adverse inference" instruction; and 3)

challenge the legality of Burnett's sentence. In response, the Commonwealth filed a motion to dismiss the petition and the PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss the petition without a hearing. Burnett did not file a response to the notice, and the court dismissed the petition in an order dated August 11, 2017 on the basis that the petition had no merit.

Burnett appealed the court's order dismissing his petition to this Court. We concluded, in the first instance, that the PCRA court had properly dismissed Burnett's ineffectiveness claims regarding the legality of his sentence and the jury instructions. However, we held that the PCRA court had erred by not holding a hearing on Burnett's claim that counsel had been ineffective for failing to pursue a self-defense claim. Specifically, we found that the PCRA court had improperly concluded that Burnett's claim lacked arguable merit but that a hearing was needed to determine whether counsel had a reasonable basis for not pursuing a self-defense claim and whether Burnett had been prejudiced by counsel's failure to raise that defense. *See Commonwealth v. Burnett*, 2662 EDA 2017 at 14 (Pa. Super. 2019). Accordingly, we vacated the PCRA court's order denying relief and remanded for an evidentiary hearing on those two prongs of Burnett's ineffectiveness claim regarding self-defense.[2]

---

[2] Burnett filed a petition for allowance of appeal to our Supreme Court, alleging that this Court erred by finding that the PCRA court had properly denied his ineffectiveness claims regarding the jury instructions and the legality of his sentence. The Supreme Court denied the petition for allowance of appeal.

The PCRA court held that hearing on March 5, 2020. Burnett's trial counsel testified at the hearing. According to trial counsel, he discussed raising a self-defense claim with Burnett twice, once before trial and once during trial. *See* N.T. PCRA Hearing, 3/5/20, at 5. Trial counsel recounted that Burnett insisted that he did not have a gun on the night of the shooting and that it was a case of misidentification. *See id*. at 6, 8, 9. According to counsel, Burnett even accused counsel of "trying to throw him underneath the bus" by trying to have him admit he had a gun and presenting a self-defense claim. *Id*. at 6, 13. Trial counsel testified that Burnett instructed him not to pursue a self-defense claim. *See id*. at 9.

Burnett also testified at the hearing, claiming that he had not spoken to counsel in preparation for his trial "except for probably a week before trial" and that they never had a conversation about self-defense. *Id*. at 17. He did not assert at the hearing that he was acting in self-defense on the night of the shooting. After the testimony concluded and as Burnett's counsel began to argue that trial counsel had been ineffective, the PCRA court stated:

> Why would a lawyer [argue self-defense] if his client is telling him 'I never had that gun. I couldn't have been acting in self-defense in firing that gun because I never had that gun?' Now he comes in today and testifies in front of me and still never says anything about self-defense. … I would think that if [Burnett's] argument [was] valid, [Burnett] would have sat in that chair and explained the defense that he wanted [trial counsel] to present that [trial counsel] refused to present, and he didn't. So, in terms of credibility, what story I accept, I really pretty much have to go with [trial counsel].

*Id*. at 28-29.

- 6 -

The court then dismissed the petition for lack of merit, reiterating that the court believed trial counsel and that counsel's testimony made "total sense." *Id*. at 34. The court entered an order dismissing the petition that same day, and Burnett filed a timely notice of appeal. The PCRA court issued an order directing Burnett to file a 1925(b) statement. Counsel responded by filing a statement pursuant to Pa.R.A.P. 1925(c)(4), notifying the court that he intended to file a no-merit letter and petition to withdraw due to the lack of any meritorious issues. In its Pa.R.A.P. 1925(a) opinion, the PCRA court concluded that Burnett had waived all issues on appeal because he failed to raise any issues in a Pa.R.A.P. 1925(b) statement. The appeal is now before us.

As an initial matter, we disagree with the PCRA court that Burnett has waived his issues on appeal because he did not file a Pa.R.A.P. 1925(b) statement. Counsel filed a statement pursuant to Pa.R.A.P. 1925(c)(4), which permits counsel to file a statement of intent to file a no-merit letter in lieu of filing a Pa.R.A.P. 1925(b) statement without waiving any meritorious issues. **See** Pa.R.A.P. 1925(c)(4); **see also Commonwealth v. McBride**, 957 A2d 752, 757 (Pa. Super. 2008) (stating that when the lower court issues a directive that counsel file a Pa.R.A.P. 1925(b) statement, counsel may either comply with that order *or* file a notice of intent to file a no-merit brief pursuant to Pa.R.A.P. 1925(c)(4)). As such, the PCRA court improperly found in its

Pa.R.A.P. 1925(a) opinion that Burnett's issues were waived on appeal for failure to file a Pa.R.A.P. 1925(b) statement.

As indicated in his Pa.R.A.P. 1925(c)(4) statement, counsel did, in fact, file an application to withdraw from representation along with a no-merit letter on appeal. This Court has clearly set forth the procedural prerequisites that counsel must meet before being permitted to withdraw from representation on collateral appeal. Counsel must file a ***Turner/Finley*** no-merit letter, and that letter must detail counsel's diligent review of the case, list the issue the appellant wishes to be reviewed, explain why that issue lacks merit, and request permission to withdraw. ***See Commonwealth v. Wrecks***. 931 A.2d 717, 721 (Pa. Super. 2007).

In addition, counsel must send the appellant a copy of the no-merit letter, a copy of the application to withdraw, as well as a statement advising the appellant of his right to proceed with new counsel or *pro se*. ***See id***. If counsel meets these procedural prerequisites, this Court will then conduct its own review of the merits of the appeal. ***See id***. Only if we agree with counsel that the issue lacks merits will we permit counsel to withdraw and deny relief. ***See id***.

Here, counsel has complied with the procedural prerequisites of ***Turner/Finley***. He filed an application to withdraw and a no-merit letter detailing the nature of his review of the case, listing the issue sought to be reviewed, *i.e*. whether counsel was ineffective for failing to raise a self-defense

claim, explaining why that issue lacks merit, and requesting permission to withdraw. **See Anders** Brief on Behalf of Appellant, 2/12/21; Application to Withdraw as Counsel, 2/12/21. Counsel also sent Burnett a copy of the no-merit letter and the application to withdraw, as well as a statement advising Burnett of his right to proceed with new counsel or *pro se*. Because counsel has complied with the necessary procedural prerequisites, we turn to Burnett's claim that counsel was ineffective for failing to argue that Burnett acted in self-defense on the night of the shooting.

Counsel is presumed to have been effective. **See Commonwealth v. Brooks**, 839 A.2d 245, 248 (Pa. 2003). In order to overcome that presumption and prevail on a claim of ineffectiveness, Burnett must establish that: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for his conduct; and (3) he was prejudiced by counsel's ineffectiveness. **See id.** A failure to establish any one of these three prongs will defeat a claim challenging counsel's effectiveness. **See Commonwealth v. Basemore**, 744 A.2d 717, 738 n.23 (Pa. 2000).

Here, the PCRA court directly stated at the evidentiary hearing that it credited counsel's testimony that Burnett insisted that he did not have a gun on the night of the shooting and, because of that, did not want counsel to pursue a self-defense claim. We are bound by that credibility determination. **See Roney**, 79 A.3d at 603. Given this determination, the court made it clear that counsel had a reasonable basis for not arguing that Burnett had acted in

self-defense - his client instructed him not to raise that defense. Moreover, the court noted that counsel's decision not to present a self-defense claim was "understandable" in light of the fact that:

> I mean, juries aren't as understanding as lawyers to alternative arguments: My client never had that gun, but if he had the gun and if he shot at people, he did it in self-defense. That's a difficult act to pull off in front of a jury.

N.T. PCRA Hearing, 3/5/20, at 28.

Burnett's counsel agrees with the PCRA court, stating in his no-merit letter that "it is difficult to argue that there was no reasonable basis for counsel's action in this matter, so this issue does not have merit." ***Anders*** Brief on Behalf of Appellant at 12. We agree with both the PCRA court and counsel that Burnett has not established that counsel had no reasonable basis for failing to pursue a self-defense claim and that his ineffectiveness claim therefore necessarily fails. ***See Basemore***, 744 A.2d at 738 n.23. As such, we affirm the PCRA court's order denying Burnett's PCRA petition and grant counsel's application to withdraw from representation.

Order affirmed. Application to withdraw from representation granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/23/2021

- 10 -